[Sac. No. 7018. In Bank. May 27, 1960.]

MARJORIE E. WILSON, Respondent, v. KENNETH D.
WILSON et al., Appellants.

Henry V. Cleary for Appellants.

Garry, Dreyfus, McTernan & Keller and Francis J. McTernan for Respondent.

DOOLING, J. pro tem.*—Defendants appeal from a summary judgment entered against them in an action on a promissory note. [■■] They also appeal from an order sustaining plaintiff's demurrer to their counterclaim and from an order denying defendants' motion for a summary judgment. These orders are not appealable (*Jeffers* v. *Screen Extras Guild, Inc.,*

*Assigned by Chairman of Judicial Council.

107 Cal.App.2d 253, 254 [237 P.2d 51]; *Schulze* v. *Schulze,* 121 Cal.App.2d 75, 83 [262 P.2d 646]), and the attempted appeals therefrom will be dismissed.

The controlling question is whether the trial court properly granted plaintiff's motion for a summary judgment. Such judgment is purely statutory (Code Civ. Proc., § 437c) and can be employed only in cases where no material issue of fact is presented. (*Desny* v. *Wilder,* 46 Cal.2d 715, 725 [299 P.2d 257]; *Eagle Oil & Ref. Co.* v. *Prentice,* 19 Cal.2d 553, 555-556 [122 P.2d 264]; 28 Cal.Jur.2d, § 41, p. 670.)

Counsel were agreed upon the oral argument that no material issue of fact was presented and we are satisfied from an examination of the record that this is true, and that the trial court properly entered summary judgment for the plaintiff.

The following undisputed facts appear from the pleadings and the affidavits of the parties: On October 28, 1954, defendant Kenneth and plaintiff Marjorie Wilson entered into a property settlement agreement by which they undertook to settle their property rights and other rights, duties and obligations arising out of their marriage. Kenneth agreed to pay Marjorie $100 per month for the support of each of their two minor children during minority and $250 a month for Marjorie's "support and maintenance" for 24 months after entry of any interlocutory divorce decree. As part of the agreed division of property, Marjorie was to receive $9,000, payable by a $6,000 promissory note due two years after execution of the agreement and a $3,000 promissory note due three years after execution of the agreement, with no interest until the notes became due, and interest at 6 per cent thereafter. Pursuant to the agreement and on the same date—October 28, 1954—Kenneth and his mother, defendant Nettie Wilson, as co-maker, executed the two notes. Other property and debts were also allocated under the agreement. Thereafter, on November 15, 1954, Marjorie obtained an interlocutory decree of divorce, and the property settlement agreement was incorporated therein.

Kenneth paid the $250 per month for Marjorie's support for the agreed 24 months, the final payment being made on October 1, 1956. Thereafter, on October 28, 1956, the $6,000 note became due but defendants were unable to pay it. To meet this situation, Kenneth's attorney then submitted to Marjorie's attorney a proposed agreement, and the parties signed it on November 19, 1956. After referring to the parties' property settlement agreement, the default in payment of the

$6,000 promissory note, and Kenneth's payment to Marjorie "as and for her support and maintenance the sum of $250.00 per month, in addition to the sum of $200.00 per month for the support and maintenance of the two minor children of the parties, pursuant to said property settlement agreement," the agreement of November 19, 1956, provided as follows:

"1. Kenneth . . . agree[s] to continue the said payments on account of the support and maintenance of said Marjorie . . . in amount of $250.00 per month, . . . and for the support and maintenance of said minor children in the amount of $200.00 per month until such time as the principal of said [$6,000] promissory note shall be paid and discharged in full.

"2. Marjorie . . . waives the provisions of said promissory note providing for interest . . . and agrees that no interest will be payable upon said note so long as the payments hereinabove provided shall be maintained.

"3. At such time as the said principal sum of said promissory note shall be paid . . . Kenneth . . . shall have no further obligation to pay the said sum of $250.00 per month, or any other sum, pursuant to the provisions of said property settlement agreement or otherwise, on account of the support and maintenance of said Marjorie. . . . Nothing herein shall be construed, however, to modify the obligation of Kenneth . . . to continue payment of the said sum of $200.00 per month for the support and maintenance of the said minor children of the parties.

"4. In consideration of the agreements of Kenneth . . . hereinabove set forth, Marjorie . . . agrees to forbear legal action of any nature whatsoever for the enforcement or collection of said promissory note for such period of time as Kenneth . . . shall continue to make payments on account of the support of said Marjorie . . . as hereinabove specified."

Kenneth made the monthly payments pursuant to the agreement of November 19, 1956, but did not pay the $3,000 note when it became due. Marjorie then brought this action to recover on that note. Defendants answered, setting up the November 19, 1956 agreement as an affirmative defense and by way of counterclaim, alleged that the $250 monthly payments made to Marjorie pursuant to that agreement constituted usurious interest for the forbearance of suit on the $6,000 note. Defendants sought credit for treble the amount of the allegedly usurious payments made during the year preceding the filing of their counterclaim (Usury Law, Deering's General Laws, Act 3757, § 3, Stats. 1919, p. lxxxiii),

plus the amount of the allegedly usurious interest paid prior to the year preceding the filing of the counterclaim. (*Shirley* v. *Britt,* 152 Cal.App.2d 666, 670 [313 P.2d 875].) The amount so credited would exceed the total of the $6,000 and $3,000 notes so as to effect their discharge, and would permit defendants to recover from plaintiff an additional amount. (91 C.J.S. Usury, § 62, p. 644; see *Westman* v. *Dye,* 214 Cal. 28, 30, 36-38 [4 P.2d 134]; *Aitken* v. *Southwest Finance Corp.,* 131 Cal.App. 95, 104 [20 P.2d 1000].) The parties have at all times agreed that the additional monthly payments made pursuant to the 1956 agreement were not to be credited as payments on the $6,000 note.

Plaintiff demurred generally to the affirmative defense and counterclaim, and defendants moved for a summary judgment. Defendants presented Kenneth's affidavit in support of their motion and plaintiff filed her opposing counter-affidavit. In her counter-affidavit, plaintiff averred that the 1954 agreement's limitation of the payment of $250 a month for her support for two years was directly connected with the agreed time for payment of the $6,000 note at the end of said two-year period and the additional sum of $3,000 one year later; that the parties intended that payment of the $6,000 note ''would provide plaintiff with sufficient capital to invest in a business and to become self-supporting, thereby relieving . . . Kenneth . . . of his legal obligation to maintain and support plaintiff''; that when the $6,000 note was not thereafter paid when due, Kenneth ''knowing . . . that plaintiff · required the said sum in order to become self-supporting . . . proposed to plaintiff that he continue to pay the . . . $250 per month to plaintiff for her support and maintenance until said note was paid,'' and the November 19, 1956 agreement was accordingly executed by Kenneth and Marjorie; and that in addition to failing to pay the two promissory notes concurrently executed with the parties' original 1954 agreement, Kenneth had ''failed and refused'' to perform his promise under the 1954 agreement to pay community debts amounting to some $3,460.

The trial court denied defendants' motion and sustained plaintiff's demurrer to defendants' counterclaim without leave to amend. Plaintiff then moved to strike defendants' answer and for a summary judgment on her complaint. She presented a supporting affidavit, the averments of which were devoted solely to her cause of action on the unpaid $3,000 note owing by defendants, and defendants filed Kenneth's counter-

affidavit, reiterating the premise of their counterclaim as to the alleged usurious character of the 1956 agreement. At the hearing, the trial court apparently disposed of the parties' opposing contentions as if there had been cross-motions for summary judgment on plaintiff's complaint and on defendants' counterclaim for usury, for the ensuing summary judgment for plaintiff recites that it was rendered after the "court [had] read the pleadings and affidavits on file in this cause."

It therefore appears that the parties and the trial court proceeded upon the assumption that no material issue of fact was presented. We agree that they were correct in that assumption.

■ The averments of respondent's affidavit, that it was the intention of the parties that the $6,000 provided for in the first promissory note to fall due would provide respondent with sufficient capital to become self-supporting thus relieving appellant of his legal obligation to further support respondent and that the promise to continue the $250 payments for support was made to carry out this intention when the $6,000 note was not paid when due, were not denied by appellant, and no other triable issue of fact was presented, the sole question remaining being one of law only as to whether the claim of usury was tenable under the undisputed facts. That question of law could appropriately be determined on a motion for summary judgment. There remains, however, the question of the propriety of the trial court's determination that plaintiff was entitled as a matter of law to the summary judgment entered.

Defendants' contentions are based upon the theory that the relationship between the parties following their property settlement agreement and divorce was solely that of debtor and creditor, and that the sole consideration for the agreement of November 19, 1956, was forbearance in the enforcement of the $6,000 note. They therefore contend that as Kenneth thereby agreed to pay $250 per month for such forbearance and as that amount exceeded the amount permitted solely for the forbearance in enforcing a $6,000 obligation (Cal. Const., art. XX, § 22), the agreement of November 19, 1956, was therefore usurious as a matter of law. In our view, defendants have proceeded upon an erroneous premise and accordingly have reached an unsupported conclusion.

It is conceded that the consideration recited in the agreement is not conclusive on the parties and that the true consideration for the agreement may be established by parol.

(Code Civ. Proc., § 1962, subd. 2; *Johnston* v. *Courtial*, 216 Cal. 506, 510 [14 P.2d 771]; *Richardson* v. *Lamp*, 209 Cal. 668, 670 [290 P. 14].) ▮▮▮ Under the undisputed facts of this case we are satisfied that there was sufficient consideration for the agreement of the parties in addition to the respondent's promise to forbear suit upon the $6,000 note and hence that the agreement by appellant to pay the additional sums of $250 per month for the respondent's support was not usurious. Contrary to appellant's contention appellant and respondent under the property settlement agreement approved by the court did not stand in the simple relation of debtor and creditor. Respondent is not only the former wife of appellant to whom prior to the execution and subsequent approval of the property settlement agreement he owed the continuing legal duty of support, but she is as well the mother of his children entrusted with their legal custody by the interlocutory and final decrees of divorce. Appellant owes to his children the continuing legal duty of support, the measure of which is not necessarily limited to the $100 monthly payment for each provided for in the property settlement agreement, since upon a proper showing the trial court may at any time order payments to be made for the children's support in excess of the amounts provided for in this agreement. (*Plumer* v. *Superior Court*, 50 Cal.2d 631, 637 [328 P.2d 193]; *Krog* v. *Krog*, 32 Cal.2d 812, 817 [198 P.2d 510]; *Puckett* v. *Puckett*, 21 Cal.2d 833, 843 [136 P.2d 1].) While the children are living with the mother their welfare is to a considerable extent dependent upon the economic situation of the mother, because if the mother is lacking in adequate support for herself the children who are living with her must inevitably suffer. We have in this case the additional uncontradicted facts established by respondent's affidavit that " [i]t was the intention of the parties that said sum of $6,000.00 would provide plaintiff with sufficient capital to invest in a business and to become self-supporting, thereby relieving defendant KENNETH D. WILSON of his legal obligation to maintain and support plaintiff" and that " [t]he payments of $250.00 per month, paid by defendant KENNETH D. WILSON to plaintiff were, as agreed by the parties in said memorandum of agreement, for the support and maintenance of plaintiff and were made to carry out the intention of plaintiff and defendant KENNETH D. WILSON in said property settlement agreement to provide for the support and maintenance of plaintiff until such time as said sum of $6,000.00 was paid to her."

It is thus established without contradiction that the provision of the property settlement agreement limiting the payments of $250 per month for respondent's support to a period of two years, and the promise to give the promissory note for $6,000 payable two years after date were mutually dependent promises, and the failure to pay the $6,000 note when due must result in a failure of consideration for respondent's agreement that the payments to her of $250 per month for her support should terminate at the end of the two year period. (*Brown* v. *National Electric Works,* 168 Cal. 336 [143 P. 606]; *American-Hawaiian Eng. etc. Co.* v. *Butler,* 165 Cal. 497, 516 [133 P. 280, Ann.Cas. 1916C 44].) It was in recognition of the mutual dependence of the two promises that appellant suggested to respondent the supplemental agreement that the $250 monthly payments should be continued until the $6,000 note was paid.

While the parties substituted for the original legal obligation of continuing support of the wife a fixed contract obligation to pay $250 per month for the limited period of two years, the consideration for that agreement was the promise to pay respondent the sum of $6,000 at the end of the two year period, so that she might then become self-supporting. Without considering the question of appellant's possible legal obligation to continue to support respondent upon his failure to pay the $6,000 note when due, he was undoubtedly at least under a moral obligation to do so and we are satisfied that in the situation of these parties that moral obligation is sufficient to furnish consideration for the agreement to continue the payments for support. (Civ. Code, § 1606.)

It is not surprising that no case involving a comparable fact situation has been called to our attention. This Court has given application to the provisions of section 1606 of the Civil Code which makes "a moral obligation originating in some benefit conferred upon the promisor, or prejudice suffered by the promisee . . . good consideration for a promise" to a variety of factual situations. (Moral obligation to pay a debt barred by the statute of limitations or discharged in bankruptcy, *McDonald* v. *Randall,* 139 Cal. 246, 252 [72 P. 997]; *Lambert* v. *Schmalz,* 118 Cal. 33 [50 P. 13]; *Feeny* v. *Daly,* 8 Cal. 84; moral obligation to perform oral promise unenforceable because of statute of frauds, *Estate of Rule,* 25 Cal.2d 1, 11-12 [152 P.2d 1003, 155 A.L.R. 1319]; *Coulter* v. *Howard,* 203 Cal. 17, 22-23 [262 P. 751]; moral obligation to pay for a novel literary idea supplied to defendant without previous promise to pay therefor, *Desny* v. *Wilder,* 46 Cal.2d 715, 737-

738 [299 P.2d 257] ; moral obligation to furnish medical attention for injured employee, *Deane* v. *Gray Bros. A. S. P. Co.,* 109 Cal. 433, 435 [42 P. 443] ; *Fraser* v. *San Francisco Bridge Co.,* 103 Cal. 79, 84 [36 P. 1037].) ▉ It has frequently been stated that the moral obligation is sufficient to constitute good consideration for a new promise only where a good and valuable consideration once existed. (*Estate of McConnell,* 6 Cal.2d 493, 498 [58 P.2d 639] ; *Haase* v. *Cardoza,* 165 Cal.App.2d 35, 38-39 [331 P.2d 419] ; *Dow* v. *River Farms Co.,* 110 Cal.App.2d 403, 408-409 [243 P.2d 95].) This requirement is satisfied in this case by the prior and existing relation of the parties and their children and particularly by the antecedent legal duty of support upon which rests the moral obligation of continued support when the promissory note which was intended to furnish a substitute for the previous monthly support payments was not paid. The two defendants joined in one answer and defendant Nettie Wilson's defense rests entirely on the same claim of usury just disposed of.

▉ As we have determined that the judgment for plaintiff must be affirmed, the further question arises as to plaintiff's right to attorneys' fees on appeal. The promissory note subject of this action provides for a reasonable attorney's fee ''in case suit is instituted to collect this note.'' The trial court fixed the sum of $350 as reasonable attorneys' fees for services rendered in that court. Plaintiff now requests this court to allow her reasonable attorneys' fees for services rendered on this appeal. ''A contract for a reasonable attorney's fee in enforcing its provisions embraces an allowance for legal services rendered upon appeal as well as during the trial.'' (*Dankert* v. *Lamb Finance Co.,* 146 Cal.App.2d 499, 503-504 [304 P.2d 199] ; *Cirimele* v. *Shinazy,* 134 Cal.App.2d 50-52 [285 P.2d 311, 52 A.L.R.2d 860].) Accordingly, plaintiff is entitled to attorneys' fees on this appeal, and it appears that seven hundred and fifty dollars is a reasonable sum to be allowed for that purpose.

The attempted appeals from the order sustaining plaintiff's demurrer to defendants' counterclaim and from the order denying defendants' motion for a summary judgment are dismissed. The judgment is affirmed, and defendants are ordered to pay to plaintiff additional attorneys' fees on this appeal in the sum of seven hundred and fifty dollars.

Gibson, C. J., Traynor, J., Schauer, J., Peters, J., and White, J., concurred.

McCOMB, J.—I dissent. I would reverse the judgment for the reasons expressed by Mr. Presiding Justice Van Dyke in the dissent prepared by him for the District Court of Appeal in *Wilson* v. *Wilson*, (Cal.App.) 344 P.2d 900.

Appellants' petition for a rehearing was denied June 22, 1960. McComb, J., was of the opinion that the petition should be granted.